THE defendants were indicted for a libel on Zenas B. Glazier, in a newspaper called "The Blue Hen's Chicken." The indictment set out that the defendants printed and published in a newspaper called "The Blue Hen's Chicken and Delaware Democratic Whig," the following libel on Zenas B. Glazier, viz: —
"Shall a poor lottery gambler be used as a tool for others, so as to injure the innocent, because they cannot be led or ruled by office holders and purse proud aristocrats? We shall such a tale unfold of the corruption about the court, c., as will astonish honest men.""Our independence in exposing the tricks and oppressions of courts, lawyers,c., have rendered us obnoxious to them. We learn that they have been seeking an opportunity to mulct us in fines and *Page 476 
costs, if they could only make a tool of some worthless rotten charactered lottery broker, they would all join in the crusade against us and the people."
Zenas B. Glazier. — I reside in Wilmington — am a lottery and exchange or bill broker. The defendants are the publishers and ostensible proprietors of a newspaper published in Wilmington, called the Blue Hen's Chicken. I see them going in and out of the office daily; they avow themselves as the publishers. I saw William T. Jeandell hand this paper to John F. Zebley. He brought it out of the office. Saw their carriers with others that morning. I bought some ten others from him. I bought two more from Mr. Shields, who holds himself out as an agent. Vincent was not present. It was the evening before the date the paper bears. This is the same paper. I marked it with Mr. Wetherall's name. I left the paper with Mr. Rogers, before I marked it. He had it for some time. I can identify it positively only as the paper which I delivered to and received from Mr. Rogers.
The paper was offered in evidence and objected to.
Mr. Brown. — I oppose the introduction of the paper, because it is not identified; and because it does not correspond with the indictment.
1. Mr. Glazier never marked this paper until after the marking was of no use to identify it.
2. The libel is charged as being in a paper called the Blue Hen's Chicken and Delaware Democratic Whig, and the title of this paper is only the Blue Hen's Chicken.
Mr. Rogers. — I have proved the identity sufficiently; but I need not prove it at all. The paper offered is a public newspaper. It, bears the impress of these defendants' names. It proves itself, together with proof that these defendants hold themselves out as the editors, printers and publishers, and that it came from their office. It may often be necessary to prove that the person charged as the publisher sold the identical book, c., containing the libel; but this is not so with the publisher of a whole edition, or the avowed publisher of a newspaper.
But I have proved that this paper came from the defendants' office, by the hands of one of them.
I agree that the second ground of objection is fatal, if it was true. It is a matter that I made up an opinion on at the time I drew the *Page 477 
indictment. The paper in its illustrated head or abreviated title is "Blue Hen's Chicken," but in the prospectus which announces the mode and terms of publication, the name of the paper and the names of the publishers, c., c., set out in the first column, and according to which all contracts are made, it is called "The Blue Hen's Chicken and Delaware Democratic Whig." This is its name: the vignette in large characters at the head of the paper is only a part of the name; the cock and the motto in the same place is no part of the name.
The first objection involves questions of fact, which appropriately belong to the jury, and the court would not invade their province by expressing, or intimating any opinion on the facts. Whether this alledged libel was published by the defendants; and whether it was published of and concerning Zenas B. Glazier, are questions of fact, about which it may without impropriety be assumed that some evidence has been offered; and wherever a question depends on weight of evidence, the court uniformly submits it to the jury. If no evidence be offered on the point, the court decides it; for there is nothing to leave to the jury. We therefore admit the papers in evidence, but shall say to the jury that it depends upon their opinion on the proof of publication by the defendants, and of its application to the prosecutor, whether the article contained in the paper is evidence in the case.
On the other objection the court do not perceive such discrepancy between the evidence and the indictment, in reference to the name of the paper, as will justify the exclusion of this paper.
Z. B. Glazier again. — I got this paper from Mr. John F. Zebley; handed it to Mr. Rogers, and he brought it back to me. I believe it to be the same. I marked it.
Q. Were the defendants indicted at the last term, for a libel against you?
A. Yes.
Q. What was the result of that indictment? Objected to.
Mr. Brown. — It is not the matter in issue and cannot be brought in.
Mr. Rogers. — I want to show the circumstances of this publication, in order to prove malice. I wish to prove that at the very *Page 478 
time this libel was published, the defendants were under indictment for a libel.
The Court ruled out the testimony, as the record was the best mode of proof of the existence of the indictment.
Z. B. Glazier again. — This paper is the same or a fac simile of the one I delivered to Mr. Rogers. I bought this paper (another one) of a person employed in defendant's office, and who is their common carrier. I marked it at the time. Objected to, and admitted.
John F. Zebley. — In May last I received a paper, a number of the Blue Hen's Chicken, from Jeandell, containing an article against Glazier. He was present, and I delivered it to him.
Q. Was this on the eve of a trial at New Castle, on a former indictment? Objected to, as leading.
The Court. — The rule is plain; its application is not always evident. You are first to test the witness' own knowledge or recollection of the time, by questions necessary for that. If his memory is at fault, you may suggest cotemporaneous events, with a view to stimulate or fix his recollection.
Witness. — It was at or about the time of that trial.
Charles Garretson. — I have been in defendants' employ in the office of the Blue Hen's Chicken. These defendants are the proprietors and publishers of the Blue Hen's Chicken. They mail some; employ carriers to distribute others. I think I set up a part of the matter of this number.
Joseph Miller. — I am in defendants' employment, and have been for three years. I set type and distribute papers. Defendants are the publishers of the Blue Hen's Chicken. These are genuine copies of that paper (being shown the papers already offered in evidence, and others.) They were the publishers on the 7th and 14th of January, and on the 26th of November, 1848, c., c.
These papers were stated to contain distinct previous publications of libels on the prosecutor, and were offered to prove malice. They were objected to.
Mr. Brown. — There are three indictments pending against the defendants now. I put it to the prosecuting officer to say whether those indictments are for the matters contained in these papers.
Mr. Rogers. — They are not.
Mr. Brown. — The defendants are on trial for one libel; they came to meet that. They had no notice of any other. *Page 479 
 Mr. Rogers. — It is a settled principle of evidence, that, for the purpose of showing malice, prior and distinct libels may be given in evidence. If it were a new question, it would be perfectly clear that such previous publications were the very best evidence of the quo animo
with which the libel in question was published. If it were a case of murder to which it has been likened, murder of Z. B. Glazier's person, instead of his reputation, previous attempts at murder or threats would be evidence.
The Court admitted the papers in evidence.
By the Court. — The law is well settled on the subject. If the papers contain other libels against the prosecutor prior to the libel for which the defendants are indicted, they are evidence of malice. If the articles referred to are not libellous, or are not against Mr. Glazier, they are not evidence.
Mr. Rogers then read numerous articles from the papers proved by Miller,
The State closed. The defendants offered no evidence.
Mr. Rogers to the jury. — It is for the court to say whether the paper charged in the indictment is a libel; — for the jury to say whether its publication has been proved. The evidence of that: — that defendants are the avowed publishers. That they were in fact engaged in the office. That they employed carriers to distribute these very papers. That one of them himself published this very paper to Zebley.
Mr. Brown. — In libels the jury are the judges of both law and fact.
Definition of libel. Any writing, printing or painting maliciously published, and tending to hold one up to public reproach, contempt or ridicule. Have these defendants published a malicious article against Zenas B. Glazier, having such a tendency.
The trial is solely on the paper set out in the indictment. Is that a libel? If it is not, the defendants cannot be convicted, though all the others given in evidence are libellous.
What is the charge? How does it affect Zenas B. Glazier? His name is not in the article. How does it refer to him? The reference cannot bemade; it can only be pointed by an inuendo. The indictment does not even aver that Glazier was a lottery broker. And if the reference to Glazier is not found on the paper itself, it cannot be made out by other libels however villainous and libellous they may be. *Page 480 
2. The jury is to say also whether the proof supports the indictment in regard to the name of the paper.
3. The malice.
Mr. Rogers replied. — He did not controvert the position taken in reference to the rights of juries in terms; but did altogether in the application the defendants' counsel made of it.
The jury have power by a general verdict to over-rule the court; but they have no right. Questions of law belong to the court; questions of fact to the jury. Is the publication a libel? — This is a question of law. Is the publication proved; and does it refer to Glazier; these are questions for the jury. Malice was any unauthorized publication which is libellous.
Chief Justice BOOTH charged the jury. — The court has been requested on both sides to explain to the jury what is their province, and what the province of the court, in trials for libels.
The Constitution of the State fixes this. The press shall be free to every citizen who undertakes to examine the official conduct of men acting in a public capacity; and any citizen may print on any subject, being responsible for the abuse of that liberty. In prosecutions for publications investigating the proceedings of officers, or where the matter published is proper for public information, the truth thereof may be given in evidence; and in all indictments for libels, the jury may determine the facts, and the law, as in other cases.
Just as in an indictment for an assault, what is an assault is a question of law; whether an assault has been made is a question of fact; or on an indictment for murder, what is murder, is a question of law; whether murder has been committed in the particular case, is a question of fact; but as in murder, asault or libel, the jury renders a general verdict of guilty or not guilty, their verdict is compounded of law and fact, and they are therefore judges of both.
The Chief Justice here read largely from the opinion of Judge Story, in the case of the United States vs. Balltiste, where this subject is examined; and he characterized that judge as one of the purest and most learned of the age and country. He then defined a libel in the words adopted by the court in the case of Layton vs. Harris, 3 Harr. Rep., 407, and by the Court of Appeals, in the case of Rice vs. Simmons, 2Harr. Rep., 431, 433: "A libel is a miscellaneous publication in printing, writing, signs or pictures, imputing *Page 481 
to another something which has a tendency to injure his reputation; to disgrace or to degrade him in society and lower him in the esteem and the opinion of the world, or to bring him into public hatred, contempt or ridicule."
Judged by this definition, the paper here objected to, and which forms the subject of this indictment, is a libel against the person, whoever he may be, to whom it refers? It represents him as a lottery gambler, as a person who was the tool of others, for the purpose of oppressing the innocent; and it calls him in express terms "a worthless, rotten charactered lottery broker."
Whether Zenas B. Glazier, the prosecutor in this case, is the person alluded to; and whether the libel was published of him by the defendants, are questions of fact for the jury. The application is to be made from the paper itself and such explanations as it is capable of; if that application and the publication be proved, then other publications previously made and having the same object, are evidence of the malice with which the particular publication was made. But in regard to a publication libellous in itself, the term malice, or malicious, means simply legal malice; that is the doing an act to another's injury, without lawful excuse; such malice as may be implied from the act itself. As in murder, the shooting a man with a gun is an act from which the law implies malice; so in a libellous publication, the law implies a malicious purpose to defame; for every one is supposed to intend whatever is the necessary consequence of his own act.
 Verdict — guilty.
The defendant's counsel moved for a new trial, and gave notice of a motion in arrest of judgment.
On the argument of the motion, Mr. Brown said, this was a question about which there had been much controversy in England and in this country. He attacked Judge Story's opinion as referred to in the charge; and while he admitted the great eminence of that judge, he said that he often fell into great errors. He instanced an opinion given by him that the defendant could not move for a new trial in a capital case, because by the Constitution he could not be twice put in jeopardy; and therefore he must be hung to avoid this jeopardy. (American Jurist — Jury — Powerand Duty of.)
He did not say the court shall not suggest the law to the jury; if the jury are left at liberty to determine the law after it is stated, (1Baldw. Rep., 99, U. States vs. Wilson Porter.) If the opinion *Page 482 
of the court in relation to the law is evidence of the law, the jury has the right to decide upon the law. (Stanhope's Treatise on Libel; StateTrials, 27, 38, 9, 5, 2; Vaughan's Rep., 135; Bushell's Cases;Campbell's Lives of the Chancellors, 347.) The power of the jury todetermine the law in cases of libel is apparent from the fact that in case of acquittal the court cannot set aside the verdict. (Constitution,art. 1, sec. 5.)
Mr. Rogers said this was no new matter — no novel doctrine; it was often stated as a mode of legal defence; and the court had disposed of it by a simple adherence to the settled law every where.
Abundance of authority might be found, such as had been cited, of political opinions, but no judicial opinions of any weight, could be found to the contrary. The contest in England was between a general and a special verdict. The law had been settled here for many years by courts, the authority of which this court has not the power to disregard.
Being settled he declined to argue the question. He said, however, in vindication of Judge Story, that the opinion attributed to him was a misprint; no one could believe him so ignorant as the counsel for the defendants had represented him. This opinion meant to refer to an application against the prisoner for a new trial, after an acquittal. In that case his life would be twice in jeopardy.
Mr. Brown replied.
The Court. — The defendants' counsel has rightly said that the question involved in this case was (as a political question) in controversy for a great many years; but it was settled both as a political and a legal question as early as 1792 in England, namely byStatute 32, Geo. III, which has been followed by our own Constitution, and the Constitution of nearly every State in the Union. It has been settled too in favor of the right of the jury to judge of the law in capital cases to the extent then contended for; but never, so far as we know, in any age in England or in this country, to the extent nowcontended for. The question originally was, whether in libel cases the jury had any thing to do with judging of the legal character of the libel; whether a jury had the, right to return a general verdict in libel cases as in other cases; or whether they were not bound to return a special verdict, finding merely the fact of publication; leaving it to the court to determine the guilt or innocence of the party, applyingtheir judgment of the law to the facts, as found by the jury. It was settled that the jury had the right to return *Page 483 
a general verdict on the facts and the law, which of course involves a judgment upon the law as stated to them by the court; but that the question of libel or no libel is a question of law; and that it is the province of the court to instruct the jury what is the law on this, as on all other legal questions, cannot be doubted.
The court so put it to the jury in these cases. We commenced the charge in the very words of the Constitution, namely; that "in all indictments for libels the jury may determine the facts and the law, as in other cases;" and if we were misunderstood on this subject, it must be because neither our language nor that of the Constitution itself can make it plain. But we were not misunderstood, at least by the jury. They not only understood that they had the power, under our charge, to judge both of the law and the fact; but they exercised that power, and the same jury, on the same facts, and under the same charge, (the two cases being tried together) found the defendants guilty in the one indictment, and not guilty in the other.
But while we stated to the jury that they had the power, (and must necessarily exercise it in finding a general verdict) to judge of the facts and the law, we did say to them, and we repeat, that whether any publication be a libel or not, is a question of law; that all questions of law are for the court to instruct the jury upon, and that it is the duty of the jury to take the law from the court, as they take the facts from witnesses, and make their verdict accordingly. This is a principle of the utmost consequence to life and liberty as well as property. It extends to all criminal cases as well as to libels; for there is no difference in this respect between the law of libel and of murder, or of assault and battery. What is an assault is a question of law; what is murder is a question of law; and so of libel. Whether in a given case the facts amount to murder, or assault, or libel, is a matter for the jury under the direction of the court on the law. The judge defines the offence; he states or assumes, or supposes, facts necessary to make the offence; and tells the jury if such facts are proved, it is murder, or assault, or libel; and as the words of a libellous writing are certain, he says at once, that it is, or it is not, a libel. The jury take that as the evidence of the law, they turn to the witnesses for the evidence of the facts; and, compounding their, verdict of law and fact; judging in this sense of the facts and the law, they render a general verdict of guilty or not guilty. *Page 484 
This is a plain, practical and safe system. But to say that the jury are judges of the law in the same sense as they are judges of the facts, would be an exceedingly dangerous principle. The law of one jury might not be the law of another jury; and if they erred through ignorance or otherwise, there would be no correction. If the judge err in misstating a legal principle, the remedy is easy; by motion for a new trial or other proceeding to review his principles; if the jury act on a misconception of law, there is no remedy, unless on our principle, that legal questions in criminal as in civil cases belong to the court, which has the power to correct such mistakes of the jury by granting new trials. This is the greatest protection to the accused; his highest and best security against oppression. For a jury may under excitement, or popular prejudice, convict as well as acquit against law; to whom then shall the accused look for protection, if the jury are the judges of the law? Take the case of these defendants, and suppose the court had charged, in either of the cases, that the publication was nolibel; but the jury in the exercise of a power that is conceded to them, had brought in a verdict of guilty; it would be in vain to turn to the court for protection, if the jury are judges of the law as well as of fact. And when we extend this principle to other crimes even more difficult in their construction and more dangerous in their consequences, the establishment of such a principle would be alarming.
There is no such principle, and never has been, in Delaware. The question, as one of speculation and of declamation, is not new in our courts; it is as old as the courts are; but as a legal principle it has been repudiated and turned out of court, as often as it has been presented; and often with much less courtesy than we have thought proper to treat it, and its advocate, on this occasion.